

**KEVIN H. KONO, OSB** #023528
kevinkono@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon  97201
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

**MARK J. MACDOUGALL**, *pending pro hac vice*
mmacdougall@akingump.com
**AKIN GUMP STRAUSS HAUER FELD LLP**
Robert S. Strauss Building
1333 New Hampshire Ave., NW
Washington, DC 20036-1564
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4510

**PLATO CACHERIS,** *pending pro hac vice*
pcacheris@troutcacheris.com
**TROUT CACHERIS LLP**
1350 Connecticut Ave., NW
Suite 300
Washington, DC 20036
Telephone:  (202) 464-3300
Facsimile:  (202) 464-3319

Attorneys for Plaintiff Ukrvaktsina

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **UKRVAKTSINA,** a Ukrainian state-owned enterprise, | CV '10 N6297      AA |
| **Plaintiff,** | **COMPLAINT** |
| v. | **(RICO; Fraud; Civil Conspiracy)** |
| **OLDEN GROUP, LLC**, an Oregon limited liability company; and **INTERFARM, LLC**, a Ukrainian company, | |
| **Defendants**. | **DEMAND FOR JURY TRIAL** |

For its Complaint, Plaintiff Ukrvaktsina ("Plaintiff") alleges as follows:

Page 1 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

**DWT 15478658v2 0085000-004377**

35932

## NATURE OF THE CASE

1.

This action arises from the fraud perpetrated by Defendants Olden Group, LLC ("Olden Group"), a company founded and headquartered in Oregon, and Interfarm, LLC ("Interfarm"), a Ukrainian company, against the Ukrainian state-owned enterprise Ukrvaktsina. Interfarm and Olden Group conspired to overcharge Ukrvaktsina for millions of dollars in vaccine purchases through acts of fraud, money laundering and other criminal acts. Olden Group and Interfarm carried out their scheme by, among other things, submitting false invoices and customs declaration forms and entering into sham contracts with each other, all for the purpose of deceiving Ukrvaktsina. The Defendants' misconduct is pervasive and ongoing.

2.

As part of the scheme, Interfarm and Olden Group used United States banks, to conceal the proceeds of their unlawful activities. The economic benefits obtained from the use of a United States company, which facilitated the concealment of the inflated prices charged to Ukrvaktsina, were a substantial motivating factor for Interfarm and Olden Group to initiate and continue their offenses against Plaintiff.

3.

Plaintiff Ukrvaktsina procures vaccines for the people of Ukraine and distributes vaccines to health clinics, hospitals and the general population in Ukraine. Defendant Olden Group is an import/export company that, among other things, purports to distribute vaccines. Olden Group works with foreign companies, such as Interfarm, to charge illegal mark-ups that were either not authorized by Ukrvaktsina or were authorized unwittingly as the result of fraud.

## JURISDICTION AND VENUE

4.

The Court has subject matter jurisdiction because Plaintiff's claims arise under the laws of the United States. 28 U.S.C. § 1331.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

5.

The Court has general personal jurisdiction over Defendant Olden Group because Olden Group is headquartered in Oregon, was incorporated in Oregon, is registered to do business in Oregon, and maintains regular, continuous and systematic contacts with Oregon.

6.

The Court has specific personal jurisdiction over Defendant Interfarm because the cause of action and Plaintiff's injuries arise from Interfarm's acts within and contacts with the State of Oregon.

7.

In the alternative, this Court has general personal jurisdiction over Interfarm pursuant to Fed. R. Civ. P. 4(k)(2), because Interfarm maintains regular, continuous and systematic contacts with the United States and Interfarm is not subject to the jurisdiction of any state's courts of general jurisdiction.

8.

According to its website, Interfarm transacts substantial business in the United States. For example, Interfarm purports to conduct business with U.S. companies such as Pfizer, Valeant, and Organon.

9.

The Court also has personal jurisdiction over Interfarm because Interfarm and Olden Group engaged in a conspiracy as set forth herein and Olden Group committed acts within the State of Oregon in furtherance of that conspiracy. Those acts of Olden Group in furtherance of the conspiracy are attributable to Interfarm as a member of the conspiracy and constitute sufficient contact in the form of transacting business in Oregon to give rise to personal jurisdiction.

10.

This Court has personal jurisdiction over Defendant Interfarm pursuant to ORCP

Page 3 - COMPLAINT

4 because ORCP 4 L provides for personal jurisdiction coextensive with and to the extent permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which requirements are met as set forth herein.

11.

This Court has supplemental jurisdiction over the state law claims asserted in counts III & IV pursuant to 28 U.S.C. § 1367.

12.

There are two sources of venue in this Court:

a.    Plaintiff asserts claims under Chapter 96 of Title 18 of the United States Code (RICO), and Olden Group transacts business affairs, resides, and may be "found" in this judicial district.  18 U.S.C. § 1965(a).

b.    Defendant Interfarm is an alien and may be sued in any district.  28 U.S.C. § 1391(d).

## **THE PARTIES**

13.

The Plaintiff, Ukrvaktsina is a state-owned enterprise organized under the laws of Ukraine, with its principal place of business at 4 Dankevicha Street, Kyiv, Ukraine.

14.

Ukrvaktsina is wholly owned by the Government of Ukraine.

15.

Ukrvaktsina was created in 1993 pursuant to an Order of the Ministry of Health of Ukraine #126 dated June 2, 1993.  Its primary purpose is to procure vaccines, pharmaceuticals, and other medical products and to distribute these products to hospitals.

16.

Olden Group is a limited liability company organized under the laws of Oregon with its principal place of business at 942 Windemere Dr. NW, Salem, OR 97304-2722.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

DWT 15478658v2 0085000-004377

17.

Olden Group was formed on March 25, 2003 and has filed annual reports and paid annual report dues to the State of Oregon every year since its formation.

18.

Olden Group represents to the State of Oregon and the public at large that it is owned by two companies: (1) Worldwide Management Corporation ("Worldwide Management"), located at P.O. Box 346 Corozal Town, Belize; and (2) International United Holding Ag, located at #2 Commercial Centre Square, Alofi, Niue ("International United").

19.

Niue is a small island located in the middle of the South Pacific Ocean. Its population is approximately 1400 people. Niue disbanded its corporate registry in 2006 amid international criticism that it was being used exclusively as a haven for money launderers and tax evaders. Niue no longer houses any international companies, including International United.

20.

Despite the fact that International United was nothing more than a shell company, and has not existed since 2006, Olden Group's management and registered agent continue to represent to the State of Oregon and the public at large that International United is co-owner of Olden Group.

21.

Worldwide Management and International United own or control multiple companies, including Rotterdam Holding LLC, and AST Holding LLC. Each of these companies represent to their respective states that they are owned in whole or in part by International United despite the fact that the entity no longer exists.

22.

Interfarm is a limited liability company organized under the laws of Ukraine with its principal place of business at 18-A Kikvidze Street, Kyiv, Ukraine.

Page 5 - COMPLAINT

## NON-PARTIES INVOLVED IN THE SCHEME

23.

Sanofi Pasteur ("Sanofi") is the vaccines division of Sanofi-Aventis Group, the largest company in the world devoted entirely to vaccines. Sanofi manufactures vaccines are used around the world, including Ukraine and the United States. Interfarm markets itself as the exclusive distributor of Sanofi vaccines in Ukraine.

24.

Olden Group's Director is O. Yaroschuk. Mr. Yaroschuk signed the sham contracts between Interfarm and Olden Group. On information and belief, Mr. Yaroschuk does not exist but was fabricated to shield the true owners of Olden Group.

25.

Interfarm's Commercial Director O.B. Zak ("Zak"), Director Ya Sorokovyi ("Sorokovyi"), and Director Vadim Romanyuk ("Romanyuk") signed sham contracts between Olden Group and Interfarm.

## FACTUAL ALLEGATIONS

26.

Plaintiff Ukrvaktsina purchases millions of vaccines a year to meet the health needs of both the adult and child population of Ukraine. Ukrvaktsina contracts with Ukrainian suppliers to procure vaccines manufactured in foreign countries. The vast majority of Ukrvaktsina's vaccine purchases involve vaccines manufactured in foreign countries.

27.

Interfarm is one of the largest importers and distributors of pharmaceuticals and vaccines in Ukraine. The Company was founded in 1994 and has been supplying vaccines and importing foreign manufactured vaccines for Ukrvaktsina since at least 2000.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

28.

Interfarm markets itself as the exclusive Ukrainian supplier of vaccines manufactured by Sanofi.

29.

Olden Group has served as Interfarm's exclusive procurement intermediary for Sanofi-manufactured vaccines.

30.

Interfarm represents to Ukrvaktsina that it purchases Sanofi-manufactured vaccines through Olden Group. Olden Group also represents that it supplies Sanofi vaccines to Interfarm. In reality, Interfarm purchases Sanofi manufactured vaccines directly from Sanofi.

31.

Olden Group does not perform any work in the vaccine distribution chain. One of Olden Group's primary functions in the United States is to collude with foreign companies to launder money using apparently legitimate companies.

32.

Olden Group colluded with Interfarm to deceive Ukrvaktsina into paying artificially inflated charges.

33.

Ukrainian law prohibits importers, such as Interfarm, from marking up the price of pharmaceuticals by more than 10% over the cost they pay to obtain the goods. The mark-up restrictions are determined by the declared value on customs declarations and invoices.

34.

In order to evade the 10% mark-up limit, Olden Group and Interfarm entered into a series of sham contracts making it appear that Olden Group was involved in the distribution chain of vaccines manufactured by Sanofi. Olden Group and Interfarm entered into the sham contracts to deceive Ukrvaktsina as to the actual price Interfarm was paying for the vaccines.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

This allowed Interfarm to falsely represent to Ukrvaktsina that the mark-up complied with the 10% limit.

35.

Once Interfarm receives payment from Ukrvaktsina, Interfarm again colludes with Olden Group to launder its profits by shifting virtually all of the money that Interfarm receives from Ukrvaktsina to Olden Group-controlled bank accounts in Latvia.

<strong><u>Means and Method of the Fraud</u></strong>

36.

Olden Group and Interfarm perpetrated the fraud through the following means:

a.      Defendants entered into sham contracts with each other to give the appearance that Olden Group was involved in the vaccine distribution chain.  The following sham contracts between Olden Group and Interfarm are known to Plaintiff.  On information and belief, there are many other sham contracts in the exclusive possession of Interfarm and/or Olden Group.  On information and belief, the contracts were originally executed by Olden Group in Oregon and transmitted via wires and/or mail to Interfarm offices in Ukraine.

<strong><u>Sham Contracts Known By Plaintiff</u></strong>

| Date | Vaccine | Units | Unit Price | Total Price |
|------|---------|-------|-----------|-------------|
| 5/8/08 | TETRAct-HIB | 321,300 | $8.113 | $2,606,706.90 |
| 7/25/08 | TETRAct-HIB | 217,680 | $8.113 | $1,766,037.84 |
| 8/6/08 | TETRAct-HIB | 103,050 | $8.113 | $836,044.65 |
| 5/8/08 | Trimovax | 95,100 | $8.2084 | $780,618.84 |
| 5/8/08 | Pentaxim | 80,020 | $31.8157 | $2,545,892.31 |
| 7/25/08 | Pentaxim | 370,293 | $31.8157 | $11,781,131.00 |
| 5/8/08 | Imovax Polio | 342,910 | $7.5781 | $2,598,606.27 |
| 4/2/09 | Trimovax | 46,660 | €6.15 | €286,959.00 |

b.      Defendants submitted false customs declaration forms to Ukrvaktsina and others, misrepresenting the price that Interfarm paid to import the vaccines.  For example, if Interfarm paid Sanofi $3 per dose of vaccine,

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

Interfarm would submit customs declaration forms falsely stating that Interfarm acquired the vaccines for Olden for $8 per dose. The actual prices that Interfarm paid Sanofi for the vaccines are in the exclusive possession of Interfarm, Sanofi, and possibly Olden Group. On information and belief, Interfarm procured vaccines from Sanofi for approximately half the price it purported to pay Olden Group for the same vaccines.

    c.       Defendants submitted invoices to Ukrvaktsina containing the same false representations that were on the customs declaration forms (i.e. Interfarm represented that it acquired the vaccines for $8 per dose of vaccine instead of $4 per dose).

37.

The creation of sham contracts and the submission of false customs forms and invoices allowed Interfarm and Olden Group to artificially increase the reimbursement they received from Ukrvaktsina and to artificially inflate the cost of vaccines year after year.

**Funds Received By Artificially Inflating Prices In 2008**

38.

In 2008, Ukrvaktsina paid Interfarm in excess of $22 million to import five vaccines manufactured by Sanofi, as summarized in the chart below:

| Date | Vaccine name | Quantity, doses | Price paid to Interfarm |
|------|--------------|-----------------|-------------------------|
| March 19, 2008 | TetrAct-HIB | 641,725 | $5,184,630 |
| March 19, 2008 | Trimovax | 95,000 | $776,554 |
| March 20, 2008 | Pentaxim | 450,273 | $14,266,077 |
| March 20, 2008 | Imovax Polio | 342,840 | $2,587,254 |
| December 02, 2008 | Verorab | 2,562 | $59,206 |
| Total | | 1,532,400 | $22,873,721.00 |

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

39.

Each and every shipment of the vaccines listed above was billed to Ukrvaktsina at artificially inflated prices. Interfarm and Olden Group conspired to fraudulently overbill Plaintiff by falsely representing the price Interfarm was paying for the vaccines on customs declaration forms and invoices.

40.

For example, the March 19, 2008 contract for 641,725 doses of TetrAct HIB was purportedly filled by three contracts between Olden Group and Interfarm: May 8, 2008, July 25, 2008, and August 6, 2008. All three contracts stated that the per unit cost that Olden Group was charging Interfarm TetraAct HIB was $8.13 per dose. These same figures were reproduced on customs declaration forms and invoices submitted to Ukrvaktsina. Ukrvaktsina relied on these misrepresentations.

41.

Interfarm purchased the vaccines directly from Sanofi for substantially less than $8 per dose. The exact purchase price is within the exclusive possession of Interfarm and Sanofi but, on information and belief, Interfarm purchased the vaccines for approximately one half of the false price, or $4 per dose in this example.

42.

In furtherance of their scheme, Interfarm and Olden Group knowingly represented to Ukrvaktsina that the TetraAct HIB vaccine was purchased for more than $8 per dose.

43.

Interfarm charged Ukrvaktsina approximately $8.75 per dose for TetraAct-HIB. By representing that Interfarm paid Olden Group $8.13 per dose, Interfarm and Olden created the false impression that they were in compliance with Ukrainian law that limited vaccine mark-ups to 10% of the import price. This was a blatantly and intentionally false representation made with specific intent to deceive Ukrvaktsina and obtain additional monies.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

DWT 15478658v2 0085000-004377

44.

Upon information and belief, because of the artificially inflated prices, Ukrvaktsina was forced to purchase fewer vaccines year after year. Thus, Olden Group and Interfarm's conduct also victimized public health hospitals in Ukraine.

45.

Defendants knew that their scheme would negatively impact the amount of vaccines Ukrvaktsina could afford to purchase.

46.

In return for Olden Group's participation in the scheme, Interfarm wired Olden Group the vast majority of payments that Interfarm received from Ukrvaktsina. Despite the fact that Olden Group is an Oregon corporation, and is headquartered in Oregon, the defendants utilized Latvian bank accounts for the scheme. However, Defendants first routed the funds through U.S. banks.

47.

For example, on June 18, 2008, Interfarm wired $2,606,706.90 in money received from Ukravaktsina to Olden Group's Latvian bank account via three U.S. correspondent banks.

48.

Similarly, on October 14, 2008, Interfarm wired $4,462,883.69 in money received from Ukravaktsina to Olden Group's Latvian bank account via three U.S. correspondent banks.

## Funds Received By Artificially Inflating Prices In 2009

49.

In 2009, Ukravaktsina paid Interfarm in excess of $30 million to import five vaccines manufactured by Sanofi, as summarized in the chart below:

| Date | Vaccine name | Quantity, doses | Prices fail to Interfarm (USD Equivalent) |
|---|---|---|---|
| February 05, 2009 | Pentaxim | 450,000 | $14,025,974 |
| February 05, .2009 | Trimovax | 46,642 | $412,570 |
| December 17, 2009 | Pentaxim | 1,160 | $14,025,974 |

Page 11 - COMPLAINT

| December 25, 2009 | Vaccine for prevention of diphtheria, tetanus and pertussis (acellular), poliomyelitis, absorbed. | 83,300 | $2,509,666 |
| Total | | 581,102 | $30,974,184.00 |

50.

Each and every shipment of the vaccines listed above was billed to Ukravaktsina at artificially inflated prices. Interfarm and Olden Group conspired to fraudulently overbill Plaintiff by falsely representing the price they were paying for the vaccines on customs declaration forms and invoices.

51.

In return for Olden Group's participation in the scheme in 2009, Interfarm wired Olden Group the vast majority of payments Interfarm received from Ukravaktsina. Despite the fact that Olden Group is an Oregon corporation, and is headquartered in Oregon, the defendants continued to utilize Latvian bank accounts for the scheme, but first routed the funds through U.S. banks.

52.

Although Olden Group played no role in the procurement or distribution of any vaccine from Sanofi, Olden Group is in possession of at least $23 million in fraudulently obtained monies paid by Ukrvaktsina.

53.

Olden Group and Interfarm agreed to use Interfarm to launder the money to Olden Group bank accounts.

54.

The following chart summarizes the money laundering transactions known by the Plaintiff as of this date. On information and belief, defendants laundered additional proceeds in excess of $20 million in 2009 and continue to operate the fraud. Defendants are in exclusive possession of the banking records and invoices for the additional transactions. The transactions

Page 12 - COMPLAINT

below span over thirteen months, from June 17, 2008 through August 3, 2009.

## <u>Fraudulently Obtained Funds In The Possession Of Olden Group<br>After Being Laundered Through Interfarm</u>

| Date of Wire | Amount (USD) | Alleged Price Per Dose | Interfarm Bank Account | US Banks Involved | Olden Group Bank Account |
|---|---|---|---|---|---|
| 6/17/2008 | $2,606,706.90 | $8.113 | JSC ProCredit, Ukraine; Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc. #6084480019 |
| 6/17/2008 | $2,545,892.31 | $31.8157 | JSC ProCredit, Ukraine, Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc #6084480019 |
| 6/19/2008 | $2,387,911.12 | $7.5781; $8.2084 | JSC ProCredit, Ukraine, Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc #6084480019 |
| 6/19/2008 | $991,313.00 | $7.5781 | JSC ProCredit, Ukraine, Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc #6084480019 |
| 8/04/2008 | $3,837,418.84 | $31.8157 | JSC ProCredit, Ukraine, Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc #6084480019 |
| 8/11/2008 | $3,840,192.16 | $31.8157 | JSC ProCredit, Ukraine, Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc #6084480019 |
| 8/12/2008 | $1,766,037.84 | $8.113 | JCS ProCredit Ukraine; Acc #00416150 | Deutsche Bank; New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc. #6084480019 |
| 9/03/2008 | $836,044.65 | $8.113 | JSC ProCredit, Ukraine; Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express | Parex Bank, Latvia, Acc. #6084480019 |

Page 13 - COMPLAINT

| Date of Wire | Amount (USD) | Alleged Price Per Dose | Interfarm Bank Account | US Banks Involved | Olden Group Bank Account |
|---|---|---|---|---|---|
| | | | | Bank, New York, NY | |
| 10/14/2008 | $4,462,883.69 | $31.8157 | JSC ProCredit, Ukraine, Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc #6084480019 |
| 11/6/2008 | EUR 68 878,90 ($87,861.92) | EUR 20,89 ($26.6473) | JSC ProCredit, Ukraine, Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc #6084480019 |
| 8/03/2009 | EUR 286 959,00 ($410,437.46) | EUR 6.15 ($8.7963) | JSC ProCredit, Ukraine, Acc #00416150 | Deutsche Bank, New York, NY; JP Morgan Chase Bank, New York, NY; American Express Bank, New York, NY | Parex Bank, Latvia, Acc #6084480019 |
| **TOTAL:** | $23,772,699.89 | | | | |

## **Olden Group**

### 55.

Olden Group's involvement in fraudulent activities is not restricted to its relationship with Interfarm. Olden Group is also defrauding the State of Oregon by representing that it is owned by Worldwide and International United because International United was dissolved by Niue in 2006.

### 56.

Olden Group played a critical role in the fraudulent scheme against Ukrvaktsina in that Olden Group executed sham contracts to facilitate the importation of the fraudulently priced vaccines.

### 57.

Olden Group's key role is further illustrated by the fact that the vast majority of monies Interfarm received from Ukrvaktsina were wired to Olden Group's bank account.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

58.

Accordingly, Olden Group is jointly and severally liable with Interfarm for the conduct described herein.

## FIRST CLAIM

### (Federal Civil RICO, 18 U.S.C. § 1962(c) - as to all Defendants)

59.

Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

60.

Defendants, and each of them, are "persons" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

61.

Defendants, and each of them, violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

62.

The Enterprise. Defendant Interfarm constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4). Interfarm was utilized by the defendants for the common and continuing purpose described herein, including Paragraphs 29-44 above and engaged in the conduct of its affairs through a continuing pattern of racketeering activity. The Enterprise functioned as a continuing entity with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. The activities of the Enterprise substantially affected foreign commerce.

63.

Pattern of Racketeering Activity. Defendants, each of whom are persons associated with the Enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity

Page 15 - COMPLAINT

within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c).  The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise.  Defendants had the specific intent to engage in the substantive predicate acts alleged herein.

64.

Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below.  Defendants each committed at least two such acts or else aided and abetted such acts.

65.

The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission.  Further, the acts of racketeering by Defendants have been continuous.  There was repeated conduct during a period of time beginning in at least March 2008 and continuing to present.

66.

The Enterprise was not limited to the predicate acts and extended beyond the racketeering activity.  The Enterprise was a legal company, incorporated under the law of the Ukraine, and existed separate and apart from the pattern of racketeering activity.

67.

Plaintiff specifically alleges that Defendants participated in the operation and management of the Enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described below.

68.

Predicate Act: Use of Mails and Wires to Defraud Government/Ukrvaktsina in Violation of 18 U.S.C. §§ 1341 and 1343.  As part of their scheme alleged herein, Defendants Interfarm and Olden Group communicated with each other and Interfarm communicated with

Page 16 - COMPLAINT

Plaintiff in furtherance of the scheme to defraud Plaintiff. Upon information and belief, these communications were typically transmitted by wire (i.e., electronically) and/or through the United States mails. Such communications were false and fraudulent in that they misrepresented Olden Group's involvement in the chain of distribution, the price of vaccines and Interfarm's and Olden Group's profits. The communications also served to intentionally hide the prices charged by the manufacturer of the vaccine relationship from the government. These misrepresentations and acts constituting false pretenses are also alleged in ¶¶ 36, 37.

69.

Defendants' shared objective was and is to divert funds to their own benefit.

70.

Plaintiff reasonably and justifiably relied upon the Defendants' false representations, and Plaintiff has been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein. The false representations upon which Plaintiff relied include the following:

a. Each and every customs declaration form prepared by Interfarm and Olden Group relating to its importation and distribution of vaccines from at least 2008 – Present. Interfarm and Olden Group falsified the price Interfarm paid for each and every vaccine in order to obtain additional payments from Ukravaktsina.

b. Each and every contract between Interfarm and Olden Group between at least 2007 – 2009 in which Olden Group purports to be Interfarm's vaccine supplier. Several of these sham contracts were provided to auditors in an effort to justify Interfarm's inflated prices. These include, but are not limited to, the contracts described in paragraph 36. Defendants furthered their scheme by creating a fictional individual to execute the sham contracts.

Page 17 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
DWT 15478658v2 0085000-004377 Portland, Oregon 97201 · (503) 241-2300

71.

Predicate Act:  Unlawful transportation of Stolen Property in violation of 18 U.S.C. § 2314.  As part of the scheme alleged herein, Defendants transferred an excess of $5,000 in interstate or foreign commerce.  Defendants transported the money with the full knowledge that the money was obtained through fraud.  The unlawful transfers known to Plaintiff are set forth in paragraph 54 [chart].  Upon information and belief, Defendants engaged in additional acts of transporting money obtained through their fraudulent scheme.

72.

Predicate Act:  Money Laundering in Violation of 18 U.S.C. § 1956.  Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1956 in that, knowing that funds they received from Plaintiff constituted the proceeds of unlawful activity, including mail and wire fraud, Defendants conducted and attempted to conduct certain financial transactions affecting interstate commerce involving these proceeds.  Several of the transactions are contained in the chart following paragraph 54.

73.

These proceeds were the portions of payments received by Interfarm from Plaintiff as a result of the scheme alleged herein, i.e., payments for the falsely inflated cost of vaccines, and payments for Interfarm's increased mark-ups or distribution fees resulting from the use of falsely inflated costs to calculate such mark-ups or distribution fees.

74.

The financial transactions conducted by Defendants affecting interstate commerce involved the deposit and withdrawal of these proceeds in and from financial institutions, as well as the movement of these proceeds by wire or other means between Interfarm and Olden Group and between Olden Group and Interfarm as part of the scheme alleged herein.

75.

These financial transactions conducted by Defendants were intended to promote

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

the carrying on of the mail and wire fraud by making Olden Group appear to have a legitimate involvement in the vaccine distribution chain, and to hide from Plaintiff the false costs added to Interfarm's customs declaration forms and invoices.

76.

Predicate Act:  Engaging in monetary transactions in property derived from specified unlawful activity under 18 U.S.C. § 1957.  Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1957 in that they knowingly engaged in and attempted to engage in monetary transactions affecting interstate commerce and involving funds received from Plaintiff, which Defendants knew to be the proceeds of mail and wire fraud and criminally derived property from unlawful activity as described above, of a value greater than $10,000.

77.

Defendants transferred these funds between multiple financial institutions, including JP Morgan Chase Bank, New York, American Express Bank, New York, and Deutsche Bank Trust Company, New York, and withdrew, transferred and exchanged such funds from those financial institutions.

78.

Injury to Plaintiff's Business or Property.  Plaintiff has been proximately injured in its business or property by reason of Defendants' violation of 18 U.S.C. § 1962(c). Defendant's conduct has proximately caused Plaintiff to pay artificially inflated vaccine prices for several years.  Plaintiff's damages are quantifiable as the difference between the Interfarm's actual acquisition cost for the vaccines and the false acquisition cost in sham contracts, false customs declarations and invoices.  On information and belief, the proceeds of Defendants' racketeering injury reside in Olden Group bank accounts.

79.

Continuity of Conduct.  Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiff constituted a continuous

Page 19 - COMPLAINT

course of conduct spanning a period including at least March 2008 to present which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5).

### 80.

Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. § 1962(c).

### 81.

The unlawful actions of Defendants, and each of them, have directly, legally, and proximately caused and continue to cause injuries to Plaintiff in its business. Plaintiff seeks an award of monetary damages, to be determined at trial but conservatively estimate to be $26 million, before trebling and attorneys' fees.

### 82.

Plaintiff also seeks an award of three times the damages it sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## SECOND CLAIM

### (Federal Civil RICO, 18 U.S.C. § 1962(d) - as to all Defendants)

### 83.

Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

### 84.

In violation of 18 U.S.C. § 1962(d), the Defendants, and each of them, conspired to violate 18 U.S.C. § 1962(c). The conspiracy commenced at least as early as March 2008 and is ongoing.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

DWT 15478658v2 0085000-004377

85.

The conspiracy's purpose is to defraud Plaintiff and profit unlawfully thereby.

86.

In furtherance of this object, among other acts taken to further the conspiracy, Defendants executed fraudulent customs declaration forms, sham contracts, and invoices falsely representing the imported costs of vaccines, as described in the Complaint above.

87.

Each Defendant knowingly, willfully and unlawfully agreed and combined to violate 18 U.S.C. § 1962(c). Defendants, and each of them, objectively manifested their agreement to the commission of the substantive RICO violations by at least one member of the conspiracy by words or acts.

88.

Each Defendant committed at least one overt act of racketeering or other wrongful activity in furtherance of the conspiracy.

89.

Even if certain of the Defendants did not agree to harm Plaintiff specifically, the purpose of the acts that caused them injury was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

90.

Plaintiff has been injured and continues to be injured in its business and property by Defendants' conspiracies in violation of 18 U.S.C. § 1962(d). The unlawful actions of Defendants, and each of them, have directly, legally, and proximately caused and continue to cause injuries to Plaintiff in its business or property. Plaintiff seeks an award of damages, among other things.

91.

Plaintiff further seeks an award of three times the damages it sustained, and the

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## THIRD CLAIM

### (Fraud – as to all Defendants)

92.

Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.  The specific fraud allegations upon which this Count is based are set forth and included primarily in ¶¶ 32-37, 39-44 above, as well as in this Count.

93.

Defendants Interfarm and Olden Group, knowingly and falsely represented to Plaintiff the relationship between Olden Group and Interfarm and the extent to which Olden Group was involved in the procurement of vaccines from the manufacturer, Sanofi, as alleged specifically in ¶¶ 30, 31, 34, 35, 37, 41-52, as well as in this Count, with the intent that Plaintiff rely on those representations.

94.

Defendants, and each of them, knowingly made false and fraudulent statements regarding their intent to conduct legitimate business with Plaintiff and to adhere to Ukrainian law limiting vaccine mark-ups to not greater than 10% of the imported price.

95.

Plaintiff justifiably and reasonably relied upon Defendants' false statements and representations regarding the price paid by Interfarm and the involvement of Olden Group in doing business with Interfarm and purchasing vaccines at a certain price from Interfarm.

96.

In authorizing payment to Interfarm, and indirectly to Olden Group, Plaintiff justifiably and reasonably relied on Defendants' representations that the price was warranted.

DWT 15478658v2 0085000-004377

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

97.

Defendants' unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiff in its business or property. Plaintiff seeks an award of damages for, among other things, the inflated prices that occurred as a result of Defendants' conduct. Further, Plaintiff seeks the imposition of punitive damages sufficient to deter Defendants from committing such unlawful conduct in the future.

## FOURTH CLAIM

### (Civil Conspiracy to Defraud - as to all Defendants)

98.

Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein. The specific fraud allegations upon which this Count is based are set forth and included primarily in ¶¶ 32-37, 39-44, above, as well as in this Count.

99.

Said Defendants, and each of them, knowingly agreed and conspired with each other and/or others to defraud Plaintiff, and to knowingly and/or wantonly, recklessly, or negligently commit over acts in furtherance of their conspiracy to defraud.

100.

Pursuant to their agreement(s), Defendants, and each of them, knowingly acted in concert to defraud Plaintiff for the purpose of securing future business that would enable them to continue to unlawfully profit at Plaintiff's expense.

101.

Further, Defendants, and each of them, knowingly made false and fraudulent representations regarding their intent to conduct legitimate business transactions with Plaintiff, upon which Defendants knew and intended Plaintiff would reasonably rely. Plaintiff reasonably and justifiably relied upon the representations, and have been damaged thereby.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

102.

Defendants' unlawful conspiracy has directly, legally, and proximately caused and continues to cause injuries to Plaintiff in its business or property. Plaintiff seeks an award of damages for, among other things, harm to business prospects, that occurred as a result of Defendants' conduct. Further, Plaintiff seeks the imposition of punitive damages sufficient to deter Defendants from committing such unlawful conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.    Awarding compensatory, consequential, exemplary and punitive damages to Plaintiff in an amount to be determined at trial;

B.    Awarding treble the actual damages sustained as a result of Defendants' RICO enterprise pursuant to 18 U.S.C. § 1961 et seq., in such amount determined at trial;

C.    Awarding attorneys' fees and costs to Plaintiff pursuant to 18 U.S.C. § 1964(c); and

D.    Granting to Plaintiff such other and further relief as the Court deems just and proper.

## Jury Trial Demand

Plaintiff demands trial by jury on issues so triable.

DATED this 17th day of September, 2010.

### DAVIS WRIGHT TREMAINE LLP

By _____
    **KEVIN H. KONO**
    OSB #023528
    Telephone: (503) 241-2300
    Facsimile: (503) 778-5299
    kevinkono@dwt.com

Attorneys for Plaintiff Ukrvaktsina

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

DWT 15478658v2 0085000-004377