IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UKRVAKTSINA, a Ukranian                Civil No. 10-6297-AA
state-owned enterprise,                 OPINION AND ORDER

       Plaintiff,

   v.

OLDEN GROUP, LLC, an
Oregon limited liability
company; and INTERFARM,
LLC, a Ukranian company,

       Defendants.

_____

Kevin H. Kono
Davis Wright Tremaine LLP
1300 S.W. Fifth Ave., Suite 2300
Portland, Oregon 97201

Mark J. MacDougall
Lauren B. Kerwin
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

Page 1 – OPINION AND ORDER

Plato Cacheris
Trout Cacheris LLP
1350 Connecticut Ave., N.W.
Suite 300
Washington, D.C. 20036
    Attorneys for plaintiff

Jay W. Frank
Moule & Frank, Lawyers
259 E. 5th Ave.
Eugene, Oregon 97401

Nazar Kashuba
Demchenko & Kashuba, LLC
2338 W. Belmont Ave., 2nd Floor
Chicago, Illinois 60618
    Attorneys for defendant Interfarm, LLC

AIKEN, Chief Judge:

Defendant Interfarm, LLC filed a motion to dismiss plaintiff Ukrvaktsina's claims for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). In the alternative, defendant moves for dismissal under the common law doctrine of forum non conveniens.

Plaintiff moves to strike defendant's amended motion to dismiss. See Fed. R. Civ. P. 12(f). Additionally, plaintiff moves for reconsideration of this Court's Order granting defendant an extension of time to answer the complaint. See Fed. R. Civ. P. 60(b). For the reasons set forth below, defendant's motion is granted; plaintiff's motions are denied.

## BACKGROUND

Plaintiff is a health enterprise created and owned by the Ukranian government. Plaintiff's primary purpose is to procure vaccines, pharmaceuticals, and other medical products for distribution to local hospitals. As such, plaintiff purchases millions of vaccines a year to meet the health needs of the

Page 2 - OPINION AND ORDER

population of the Ukraine.  Typically, plaintiff contracts with
Ukranian suppliers to procure vaccines, the majority of which are
manufactured in foreign countries.

     Defendant is a limited liability company organized under the
laws of the Ukraine and with its principal place of business in
the Ukraine.  Since 2000, defendant has been supplying vaccines
and importing foreign manufactured vaccines for plaintiff.
Pursuant to this arrangement, defendant represented to plaintiff
that it purchases vaccines through Olden Group, LLC ("Olden"), an
Oregon limited liability company.

     On September 17, 2010, plaintiff filed this action, alleging
that defendant and Olden colluded to deceive plaintiff into
paying artificially inflated prices for its vaccines.
Specifically, plaintiff alleges: 1) civil violations of the
Racketeer Influenced and Corrupt Organizations Act ("RICO") under
18 U.S.C. § 1962; 2) fraud; and 3) civil conspiracy to defraud.
This Court entered a final default judgment against Olden on June
8, 2011; accordingly, Olden is no longer a party to this
litigation.  Subsequently, defendant filed a motion to dismiss
plaintiff's complaint for lack of personal jurisdiction.

                            **STANDARDS**

     A defendant may move for dismissal on the grounds that the
court lacks personal jurisdiction.  See Fed. R. Civ. P. 12(b)(2).
When  a  defendant  moves  to  dismiss  for  lack  of  personal
jurisdiction, the plaintiff bears the burden of establishing that
jurisdiction is appropriate.  Schwarzenegger v. Fred Martin Motor

Page 3 - OPINION AND ORDER

Co., 374 F.3d 797, 800 (9th Cir. 2004) (citing Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)).   Where the court makes its jurisdictional finding based on pleadings and affidavits rather than based on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.   Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 127-28 (9th Cir. 1995).

Although the plaintiff cannot rest solely on the allegations of the complaint to establish that jurisdiction is proper, the complaint's uncontroverted factual allegations must be accepted as true and any factual conflicts in the parties' declarations must be resolved in the plaintiff's favor.   Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977); see also Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (citations omitted).

## DISCUSSION

I.   Defendant's Motion to Dismiss for Lack of Personal

   Jurisdiction

Defendant asserts that plaintiff "fails to make a prima facie showing of jurisdiction over [defendant], thus requiring dismissal."   Def.'s Memo. in Support of Mot. Dism. 2.   Plaintiff alleges four bases for personal jurisdiction: 1) general jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2); 2) specific jurisdiction arising out of defendant's "acts within and contacts with the State of Oregon"; 3) jurisdiction under Oregon's long-arm statute, Or. R. Civ. P. 4L; and 4) jurisdiction under the theory of conspiracy.   First Am. Compl. ("FAC") ¶¶ 6-10.

Page 4 - OPINION AND ORDER

Generally, determining whether personal jurisdiction exists over an out-of-country defendant involves two inquiries: 1) whether the forum state's long-arm statute permits the assertion of jurisdiction; and 2) whether assertion of personal jurisdiction violates federal due process.  <u>Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.</u>, 103 F.3d 888, 893 (9th Cir. 1996) (citations omitted).  Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. <u>Schwarzenegger</u>, 374 F.3d at 800 (citing Fed. R. Civ. P. 4(k)(1)(A) and <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998)).  Because Oregon's long-arm statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. <u>Id.</u> at 801; <u>see also</u> Or. R. Civ. P. 4L.  Thus, the two inquiries merge and this Court need only determine whether the assertion of personal jurisdiction over defendant violates the Due Process Clause.

Accordingly, in order for a court to have the power to render judgment against a defendant, the plaintiff must show that the nature and quality of the non-resident defendant's contacts are sufficient to establish either "general" or "specific" personal jurisdiction. <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414-15 & n.8, 9 (1984).

A.  <u>General Jurisdiction</u>

The due process clause permits a court to exercise general personal jurisdiction over a non-resident defendant if the

Page 5 - OPINION AND ORDER

defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1171 (9th Cir. 2006) (citing Helicopteros, 466 U.S. at 415). The standard for establishing general jurisdiction is "exacting" and requires that the defendant's contacts be of the sort that approximates physical presence. Schwarzenegger, 374 F.3d at 801 (citing Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)). "Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such presence." Tuazon, 433 F.3d at 1172; see also Bancroft, 223 F.3d at 1086 (citation omitted) ("[f]actors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there").

Plaintiff alleges that general personal jurisdiction exists "because [defendant] maintains regular, continuous and systematic contacts with the United States." FAC ¶ 7. To support this conclusion, plaintiff alleges that, via its website, defendant "purports to conduct business with U.S. companies such as Pfizer, Valeant, and Organon." Id. at ¶ 8. Plaintiff makes no further allegations in support of general jurisdiction nor did plaintiff file any affidavits, declarations or evidence in support of its complaint.

Page 6 - OPINION AND ORDER

Conversely, defendant argues that "the allegations pertaining to [defendant's] alleged business transactions with Pfizer, Valeant, and Organon are deficient to the extent that these are multi-national companies with offices spanning the globe; thus, there is no indication that [defendant] conducted business with the U.S. offices of these entities, most of which are headquartered out of the U.S." Def.'s Memo. in Support of Mot. Dism. 3.

In addition, defendant relies on the declaration of its director, Vladmir Litovchenko.    Mr. Litovchenko states that defendant has never maintained a meaningful presence in Oregon or anywhere else in the United States. See Litovchenko Decl. ¶¶ 3-12. Specifically, defendant is not licensed to do business in Oregon or anywhere in the United States; defendant does not have any employees, registered agents, or representatives in Oregon or anywhere in the United States; defendant does not own, lease, or sublease any property in Oregon or anywhere in the United States; defendant has never owned any bank accounts or other assets in Oregon or anywhere in the United States; defendant does not actively solicit any business in Oregon or anywhere in the United States; defendant does not obtain any revenues from Oregon or United States residents or companies; and, finally, defendant has never sued or been sued, other than in this action, in Oregon or anywhere in the United States.  Id.

Because plaintiff failed to provide any evidence refuting the allegations contained in Mr. Litovchenko's declaration and because the allegations in plaintiffs complaint are both conclusory and

Page 7 - OPINION AND ORDER

squarely denied by defendant, I find that defendant's contacts with Oregon are not sufficiently "substantial" or "continuous and systematic" so as to approximate physical presence. See Bancroft, 223 F.3d at 1086 (contacts with the forum state were insufficient for general jurisdiction where defendant was not registered or licensed to do business in the forum state, paid no taxes to the forum state, maintained no bank accounts in the forum state, targeted no advertising toward the forum state, and where it engaged in "occasional, unsolicited sales of tournament tickets and merchandise" to the forum state). Rather, the record indicates that defendant operates virtually exclusively in the Ukraine and Europe. As such, this Court lacks general personal jurisdiction over defendant.

B.  Specific Jurisdiction

Where general personal jurisdiction is lacking, a court may exercise specific jurisdiction if the defendant has minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). Under the minimum contacts test, a court can exercise specific personal jurisdiction over a non-resident if: 1) defendant performs an act or consummates a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum; 2) plaintiff's claim arises out of or results from defendant's forum-related activities; and 3) the exercise of

Page 8 - OPINION AND ORDER

personal jurisdiction over defendant is reasonable.  Id. (citing Bancroft, 223 F.3d at 1086).

Plaintiff "bears the burden of satisfying the first two prongs of the 'minimum contacts' test."  Id. (citing Schwarzenegger, 374 F.3d at 802).  "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.  If the plaintiff succeeds in satisfying both the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Schwarzenegger, 374 F.3d at 802 (citations omitted).

### i.  Purposeful Availment

The Ninth Circuit typically treats the first element of the minimum contacts test differently in tort and contract cases. Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir.), cert. den., 547 U.S. 1163 (2006).  In contract cases, the court inquires whether the defendant "'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract."  Id. (quoting Schwarzenegger, 374 F.3d at 802). Conversely, in tort cases, the court generally applies the effects test to determine whether the defendant purposefully directs its activities at the forum state, regardless of whether the actions themselves occurred within the forum.  Id.

Despite this well-settled precedent, plaintiff argues that

Page 9 - OPINION AND ORDER

neither of these tests apply; rather, plaintiff asserts that this Court should instead perform a "qualitative evaluation of the defendant's contact with the forum state in order to determine whether 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" Plf.'s Response to Mot. Dism. 6 (quoting Harris Rutsky, 328 F.3d at 1130). Plaintiff is correct that a court's ultimate due process determination turns on whether a defendant can reasonably anticipate being haled into court in the forum state. A court, however, only reaches that conclusion by applying either the purposeful direction or purposeful availment analyses. In fact, even Harris Rutsky, the case cited by plaintiff, applied the effects test in its jurisdictional analysis. See Harris Rutsky, 328 F.3d at 1130-31. Therefore, despite plaintiff's contentions to the contrary, this Court must determine which of these standards applies.

Here, plaintiff alleges the torts of fraud and civil conspiracy to defraud, in addition to violations of RICO, based on defendant's execution of a number of allegedly sham contracts. Plaintiff is not challenging the creation or validity of these contracts, but rather the fraud that was perpetrated through them. Thus, plaintiff's claims, while related to contract law, lie primarily in tort. As such, I find that the effects test governs this case.

Page 10 - OPINION AND ORDER

a.   Legal Standard for the Effects Test

In the Ninth Circuit, the effects test requires a plaintiff to demonstrate that the defendant: 1) committed an intentional act; 2) expressly aimed at the forum state; and 3) caused harm, the brunt of which was suffered and which the defendant knows is likely to be suffered in the forum state.   Id. at 1131.

Although this iteration of the effects test has been used consistently within the Ninth Circuit, plaintiff disputes the proposition that the brunt of the harm must always be suffered in the forum, relying on Keeton v. Hustler Magazine.   See Keeton v. Hustler Magazine, 465 U.S. 770, 780 (1984) (decided the same day as Calder v. Jones, 465 U.S. 783, 788-89 (1984) (first articulating the effects test)).   Plaintiff argues that Keeton "held that specific jurisdiction was proper even though it was 'undoubtedly true that the bulk of the harm done to petitioner occurred outside of the forum.'"   Plf.'s Response to Mot. Dism. 5 (quoting Keeton, 465 U.S. at 780).   Accordingly, plaintiff contends that specific personal jurisdiction is proper in this case even though it is undisputed that the impact of the harm was suffered outside of this forum.

Plaintiff's reliance on Keeton is misplaced.   The quoted language does not support plaintiff's argument.   In Keeton, the plaintiff filed in New Hampshire, which was not plaintiff's domicile, because it was the only jurisdiction in which the statute of limitations had not yet run.   Keeton, 465 U.S. at 773.   The Court of Appeals held that personal jurisdiction was lacking

Page 11 - OPINION AND ORDER

because the plaintiff did not have sufficient minimum contacts with that forum.  Id. at 779.

In reversing the Court of Appeals, the Supreme Court held that, because the defendant produced "a national publication aimed at a nationwide audience," there was "no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed," which included New Hampshire.  Id. at 781.  Accordingly, Keeton held that there was personal jurisdiction in the forum state.  Id.

Additionally, the Supreme Court held that "a plaintiff [is not required] to have 'minimum contacts' with the forum State before permitting that State to assert personal jurisdiction over a nonresident defendant," explaining

> [i]t is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire.  But that will be true in almost every libel action brought somewhere other than the plaintiff's domicile.  There is no justification for restricting libel actions to the plaintiff's home forum.

Id. at 779-80.  Thus, the portion of Keeton relied on by plaintiff was not analyzing whether defendant's minimum contacts were sufficient for personal jurisdiction to be proper; it was instead discussing plaintiff's contacts with the forum.  Id.

However, because "[t]he plaintiff's lack of 'contacts' [with the forum state] will not defeat otherwise proper jurisdiction," the dispositive inquiry remains whether a defendant's contacts with the forum state are adequate such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.  Calder, 465 U.S. at 788 (citing Keeton, 465

U.S. at 777-79).

Therefore, despite plaintiff's contention to the contrary, I find that Keeton is consistent with the effects test as articulated by the Ninth Circuit and by the Supreme Court in Calder. Accordingly, under that standard, specific jurisdiction is proper only where the brunt of the harm occurs in the forum state.

b.  Application of the Effects Test

Defendant does not address the first element of the effects test, arguing instead that, based on the allegations in the complaint, plaintiff is unable to establish that defendant caused harm that was expressly aimed at Oregon, the brunt of which was suffered in Oregon.  See Def.'s Memo. in Support of Mot. Dism. 5.

The only mention of Oregon in plaintiff's complaint are that: 1) Olden, who participated in the alleged scheme to defraud, is licensed in Oregon; 2) defendant wired Olden "the vast majority of payments that [defendant] received from [plaintiff]"; 3) "[o]n information and belief, the contracts [between defendant and Olden] were originally executed in Oregon"; and 4) "[t]o plan, execute, and manage this scheme, [plaintiff] believes that [defendant] repeatedly communicated via wire and/or mail directly with [Olden] in Oregon."  FAC ¶¶ 36-68.

It is undisputed that, while defendant allegedly wired Olden the payments that defendant received from plaintiff, all such payments were sent to Olden's bank in Latvia via correspondent banks located in New York.  Thus, the allegedly fraudulently obtained funds never passed through Oregon.  It is further

Page 13 - OPINION AND ORDER

undisputed that the Ukranian government and the people of the
Ukraine were the ones injured by defendant's alleged conduct.

Moreover, Mr. Litovchenko's unopposed declaration states that,
in fact, all contracts between plaintiff and defendant were drafted
by plaintiff, executed in the Ukraine, and written in the Ukranian
language.   See Litovchenko Decl. ¶¶ 24-25.   In addition, all
contracts between Olden and defendant were negotiated and executed
in Kiev, Ukraine, and each contract was drafted and negotiated in
the Russian language.  Id. at ¶¶ 14-15, 18.

Thus, Mr. Litovchenko's testimony establishes that all of the
allegedly sham contracts were drafted, negotiated, and executed
outside of the United States.   The remainder of plaintiff's
allegations do not indicate any connection with this forum, other
than the fact that Olden, who is no longer a party to this
litigation, is licensed here.

Accordingly, based on this record, I find that plaintiff is
unable to establish that defendant's allegedly fraudulent acts
caused harm, the brunt of which was suffered in Oregon.   Rather,
the record reveals that the conduct at issue was not aimed at the
United States and, more importantly, that the impact from such
conduct occurred wholly outside of the United States.   Thus,
plaintiff failed to fulfill the first element of the minimum
contacts test.   It should, however, be noted that plaintiff would
be unable to prove this element even under the standard used for
contract cases, as plaintiff's allegations similarly fail to
establish that defendant purposefully availed itself of the

Page 14 - OPINION AND ORDER

privilege of conducting activities or consummating transactions in Oregon.

Therefore, because plaintiff failed to establish the first element of the minimum contacts test, this Court lacks specific jurisdiction.

### ii.   Arising Out of Forum-Related Activities

Regardless, even if plaintiff had proven the first element on the minimum contacts test, the Court would still be without personal jurisdiction.

A claim emanates out of forum-related activities if plaintiff would not have been injured "but for" defendant's conduct directed toward the forum. Panavision, 141 F.3d at 1322. Here, plaintiff asserts that but for defendant's contacts with Olden, defendant would have been unable to represent that it purchased vaccines from a third-party rather than from the manufacturer and, thus, would have been unable to perpetuate the alleged fraud.

As discussed above, the mere fact that Olden, who is not subject to this motion, is licensed to do business in Oregon is insufficient, as a matter of law, to establish that defendant's conduct was directed toward this forum or, similarly, was a "but for" cause of plaintiff's injuries.   Thus, plaintiff cannot establish the second element of the minimum contacts test.

### iii.   Reasonableness

It should also be noted that even if plaintiff was able to satisfy the first two prongs of the minimum contacts test, personal jurisdiction would still not be proper in this case, as the

Page 15 - OPINION AND ORDER

exercise of such jurisdiction would be unreasonable.

In determining whether the exercise of personal jurisdiction is reasonable, courts consider and balance seven factors, none of which are alone dispositive: 1)the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant of defending in the forum; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to the plaintiff's interest in obtaining convenient and effective relief; and 7) the existence of an alternative forum. Harris Rutsky, 328 F.3d at 1132 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985)).

Plaintiff concedes that the second and seventh factors weigh in favor of defendant. See Plf.'s Response to Mot. Dism. 12.  I find that, on balance, the remaining five factors also weigh in defendant's favor. Specifically, defendant has, at most, a tenuous connection to this forum and, as such, cannot be held to have purposefully interjected itself into Oregon's affairs.  As a result, Oregon has minimal interest in adjudicating the dispute, since defendant's alleged activities caused harm almost exclusively in the Ukraine.  In addition, at this stage in the proceedings, this case involves a dispute solely between two Ukranian companies, wherein most, if not all, of the witnesses and relevant documents are located outside of the United States. See Litovchenko Decl. ¶¶ 35-38.  Further, plaintiff's contract with defendant contains a

choice of law provision that stipulates that Ukranian law governs the parties' disputes. Id. at ¶ 24. Because, however, this Court is unfamiliar with the laws of the Ukraine, the most efficient resolution of this controversy would not occur in this forum.

Thus, based on these factors, the exercise of specific personal jurisdiction would not be reasonable.

C. Jurisdiction Based on a Conspiracy Theory

In the alternative, plaintiff asserts that this Court has personal jurisdiction under a conspiracy theory. Plaintiff argues that Olden's "actions in Oregon are attributable to [defendant] because [Olden and defendant] engaged in a conspiracy to defraud [plaintiff]." Plf.'s Response to Mot. Dism. 6. Defendant asserts that plaintiff's reliance on a conspiracy theory of jurisdiction is merely an "attempt . . . to end-run" the Due Process clause. Def.'s Reply to Mot. Dism. 8.

The conspiracy theory of personal jurisdiction is based on the premise that a conspirator's acts in furtherance of a conspiracy in the forum can be attributable to the other members of the conspiracy. See Textor v. Bd. of Regents of N. Ill. Univ., 711 F.2d 1387, 1392 (7th Cir. 1983).

The Ninth Circuit has not, however, explicitly accepted the conspiracy theory as a basis for personal jurisdiction. See Underwager v. Channel 9 Australia, 69 F.3d 361, 364-65 (9th Cir. 1995) (declining to address the question of whether a conspiracy theory is valid basis for personal jurisdiction); Menalco, FZE v. Buchan, 602 F.Supp.2d 1186, 1193 (D.Nev. 2009) ("the Ninth Circuit

Page 17 - OPINION AND ORDER

has not expressly accepted or rejected the conspiracy theory of personal jurisdiction," noting that <u>Underwager</u> is the only Ninth Circuit case to address the issue). Moreover, the Ninth Circuit has expressly rejected an analogous theory in the context of venue. <u>Chirla v. Conforte</u>, 47 Fed.Appx. 838, 842 (9th Cir. 2002) (citing <u>Piedmont Label Co. v. Sun Garden Packing Co.</u>, 598 F.2d 491, 492 (9th Cir. 1979) ("we now expressly reject any implication . . . that members of a conspiracy, as agents of one another, 'transact business' for venue purposes in any district where one of them transacts business")). As a result, "a great deal of doubt" surrounds the propriety of personal jurisdiction based on a conspiracy theory in the Ninth Circuit. <u>Id.</u>

Oregon courts similarly have declined to accept the conspiracy theory as a basis for personal jurisdiction. The only Oregon case to address the issue is <u>Geo-Culture, Inc. v. Siam Inv. Mgmt. S.A.</u> <u>See Geo-Culture, Inc. v. Siam Inv. Mgmt. S.A.</u>, 147 Or. App. 536, 936 P.2d 1063 (1997). In <u>Geo-Culture</u>, the plaintiff, while acknowledging that the defendant had no direct contact with the forum, argued that personal jurisdiction was proper because the defendant allegedly "acted as a co-conspirator in a scheme to defraud, and to engage in racketeering activities with respect to, plaintiff." <u>Id.</u> at 542. Because "[n]either [the Oregon Court of Appeals] nor the Oregon Supreme Court have previously addressed, much less endorsed, 'co-conspirator' jurisdiction," <u>Geo-Culture</u> looked to other jurisdictions for guidance, ultimately acknowledging the Delaware Supreme Court's analysis of personal

Page 18 - OPINION AND ORDER

jurisdiction based on a conspiracy theory. Id. at 542-43 (citing Istituto Bancario Italiano v. Hunter Eng'g Co., 449 A.2d 210, 225 (Del. 1982)). Geo-Culture, however, never reached the issue of whether the conspiracy theory was a viable basis of jurisdiction under Oregon law, holding "whatever the abstract merits of that question, plaintiff failed to make even a prima facie showing of the requisites of such jurisdiction." Id. at 542.

Thus, since no court within this state, district, or circuit has accepted the conspiracy theory as a valid basis of personal jurisdiction, this Court declines to do so. Regardless, even assuming that Oregon would endorse this theory of jurisdiction to permit personal jurisdiction over a foreign defendant based on the conspiratorial relationship between the foreign defendant and other defendants admittedly subject to the court's jurisdiction, the exercise of personal jurisdiction would still not be appropriate in this case.

Plaintiff here has failed to introduce any facts establishing a substantial act or effect that occurred in Oregon as a result of the alleged conspiracy. As discussed in Section I(B)(i)(b), above, plaintiff's recitation of defendant's alleged contacts with the forum are, in fact, events that took place outside of the United States. Based on plaintiff's representations to this Court, defendant's only connection to this forum are alleged communications via wire or mail directly with Olden, who is licensed in Oregon. See FAC ¶ 68.

This allegation, however, is insufficient, as a matter of law,

to qualify as a substantial act or effect in furtherance of the conspiracy. While this District has not addressed the issue, courts within the Ninth Circuit have held that "[t]he defendant, not his co-conspirator, must choose to direct his activities at the forum in causing the effect in the forum. Consequently, a co-conspirator's activities directed at the forum, even in furtherance of a conspiracy of which the foreign defendant is a member, cannot constitute purposeful direction at the forum by the foreign defendant." In re W. States Wholesale Natural Gas Litig., 605 F.Supp.2d 1118, 1140 (D.Nev. 2009) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Thus, allegations of specific contacts made by the co-conspirator with the forum in furtherance of the conspiracy are, standing alone, insufficient to demonstrate minimum contacts by the foreign defendant who otherwise has no contacts with the forum state.

Perhaps more importantly, however, plaintiff failed to plead, much less prove, that defendant knew or had reason to know that its acts outside the forum state would have an effect in this forum. Plaintiff's amended complaint merely alleges generally that defendant was a conspirator, without pleading any of the elements of conspiracy. See FAC ¶ 9. Nothing in the amended complaint or in plaintiff's briefs referred to defendant's actual or constructive knowledge with respect to activities in Oregon. Thus, as in Geo-Thermal, plaintiff is unable to make a prima facie showing of the requisites of jurisdiction based on a conspiracy theory.

Therefore, this Court does not have personal jurisdiction over defendant. Accordingly, it is unnecessary for this Court to address whether dismissal would be proper under <u>forum non conveniens</u>.

II. <u>Remaining Issues</u>

Finally, plaintiff "requests leave to conduct limited jurisdictional discovery on [defendant's] connections with Oregon and the United State in general" if this Court "determines that [plaintiff] has not met its burden of establishing personal jurisdiction over [defendant] in this forum." Plf.'s Response to Mot. Dism. 13. In addition, plaintiff has two motions remaining before this Court. First, plaintiff moves for reconsideration of the Order granting defendant an extension of time to answer the complaint. Second, plaintiff moves to strike defendant's amended motion to dismiss pursuant to Fed. R. Civ. P. 12(f).

A. <u>Plaintiff's Request for Limited Jurisdictional Discovery</u>

Plaintiff argues that jurisdictional discovery is appropriate because: 1) information regarding the alleged conspiracy and the resulting business relationship "is in the exclusive possession of [defendant] and Olden"; and 2) "[defendant's] website is no longer active, making it impossible to verify [defendant's] allegations that it limits its business to European and Ukranian markets." Plf.'s Response to Mot. Dism. 13 (citing Litovchenko Decl. ¶ 8).

Jurisdictional discovery is appropriate where "'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'"

Page 21 - OPINION AND ORDER

Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540
(9th Cir. 1986) (quoting Data Disc, Inc. v. Systems Technology
Associates, Inc., 557 F.2d 1280, 1285 & n.1 (9th Cir. 1977)).
Because of the due process concerns inherent in a motion to dismiss
for lack of personal jurisdiction, a plaintiff must make a
"colorable showing of [personal] jurisdiction" to warrant
jurisdictional discovery. Mentor Graphics Corp. v. EVE-USA, Inc.,
2010 WL 5173560, *2 (D.Or. Dec. 15, 2010); see also Butcher's
Union, 788 F.2d at 540.

While there is no Ninth Circuit precedent that defines what
constitutes a "colorable showing of jurisdiction," district courts
within the Ninth Circuit explain that "[t]his 'colorable' showing
should be understood as something less that a prima facie showing,
and could be equated as requiring the plaintiff to come forward
with 'some evidence' tending to establish personal jurisdiction
over the defendant." Mitan v. Feeney, 497 F.Supp.2d 1113, 1119
(C.D.Cal. 2007) (citing Orchid Biosciences, Inc. v. St. Louis
Univ., 198 F.R.D. 870, 672-73 (S.D.Cal. 2001)).

Here, plaintiff's request for limited jurisdictional discovery
is supported by nothing more than allegations, based primarily on
"information and belief," that have been directly contradicted by
Mr. Litovchenko's declaration. Specifically, Mr. Litovchenko's
declaration states that virtually all of defendant's assets have
been seized by the Ukranian government, including those assets that
would otherwise allow its website to remain operational. See
Litovchenko Decl. ¶¶ 30, 39. Mr. Litovchenko's declaration also

establishes that these assets, which relate to defendant's business relationships with Olden, were never returned to defendant. Id. at ¶ 30.

Since plaintiff has not produced any supporting affidavit or other evidence tending to establish personal jurisdiction and because plaintiff can access the information it seeks by simply inspecting the seized assets, without the need to initiate discovery, I find that plaintiff has failed to make a "colorable showing of [personal] jurisdiction," such that jurisdictional discovery would be proper. Therefore, plaintiff's request for jurisdictional discovery is denied.

B.   Plaintiff's Motion to Reconsider and Motion to Strike

Plaintiff also moves for reconsideration of this Court's order granting defendant an extension of time to respond to the amended complaint. Concurrent with that motion, plaintiff moves to strike defendant's motion to dismiss, arguing that, because defendant "delayed for almost a month before entering an appearance and failed to establish excusable neglect for the delay, [defendant's motion to dismiss] should be deemed immaterial and impertinent." Plf.'s Memo. in Support on Mot. Strk. 2.

As discussed in Section I, above, however, plaintiff failed to make a prima facie showing of personal jurisdiction over defendant. Absent personal jurisdiction, this Court cannot enforce its rulings against defendant. Therefore, plaintiff's remaining motions are denied as moot.

## CONCLUSION

Defendant's motion to dismiss (docs. 53) is GRANTED. Plaintiff's motion for reconsideration (doc. 55) and motion to strike defendant's motion to dismiss (doc. 57) are DENIED as moot. Accordingly, plaintiff's request for oral argument (doc. 67) is DENIED as unnecessary. This case is DISMISSED.

IT IS SO ORDERED.

Dated this **30th** of October 2011.


_____
Ann Aiken
United States District Judge